Roger ZACZEK, Appellee,

v.

D. HUTTO; W. D. Blankenship; Capt.
Ellison; and J. L. Gorden, Appellants.

Roger ZACZEK, Appellee,

v.

D. HUTTO et al, Appellants.

Nos. 78–6163, 78–6445.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 2, 1980.

Decided Feb. 20, 1981.

Alan Katz, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellants.

Dwane H. Miller for appellee in 78–6163; (Randall M. Chastain, Associate Professor of Law, University of South Carolina, Columbia, S. C., on brief), for appellee in 78–6445.

Before BRYAN, Senior Circuit Judge, RUSSELL and MURNAGHAN, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Appellee Zaczek, proceeding under 42 U.S.C. § 1983, succeeded below in a challenge to a Virginia Department of Corrections regulation restricting his ability, as an inmate of Bland Correctional Center (Bland), to receive mailed publications. He also prevailed in a separate attack on the procedures by which he was disciplined at Bland for refusal to work. The cases were consolidated on appeal, and we now reverse.

## I.

Virginia Department of Corrections Guideline 852 requires that books and other publications mailed to prisoners come directly from the publisher or from a legitimate bookstore. The Commonwealth justifies this "publishers-only" rule by pointing to the difficulty of screening publications from other sources for concealed drugs, weapons, and other contraband.

On September 18, 1977 the book *Low Blood Sugar* arrived for Zaczek in the mail from his mother. Acting pursuant to the publishers-only rule, Bland officials withheld the volume. In a letter to Superintendent Blankenship, Zaczek asserted his need for the book, for personal health reasons and for use in an action he had filed against Blankenship. The Superintendent did not then exercise his discretion to permit an exception to the rule, but asked an attorney appointed to aid Bland inmates to determine the legitimacy of Zaczek's request. On October 10 the attorney recommended release of the book; Zaczek did not gain possession until November 15, however, some time after the dismissal of his suit.

The District Court concluded that the publishers-only rule imposes a greater burden on prisoners' First Amendment rights than is necessary to achieve the Commonwealth's legitimate objectives. In this appeal Zaczek concedes that this ruling cannot stand after *Bell v. Wolfish*, 441 U.S. 520, 550, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979). Nevertheless, he urges affirmance on the theory, raised but not explicitly addressed below, that the operation of the rule deprived him of meaningful access to the courts.

The alternative theory advanced for affirmance is without merit. Zaczek failed, in the District Court and in this Court, to offer any records or other concrete information concerning his dismissed action. He did testify that in that suit, "What I claimed was that I wasn't receiving any treatment for low blood sugar, and that the doctor at Bland wouldn't recognize the fact that I had low blood sugar. He said that I didn't have low blood sugar...." It is clear from the testimony of Dr. Amonette, the physician at Bland, that Zaczek was examined and tested on more than one occasion for his asserted malady, and that the diagnosis was negative. Zaczek sought to dispute the doctor's medical judgment; such judgments are not subject to judicial review, and do not rise to constitutional significance absent "deliberate indifference to [prisoners'] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). In these circumstances, the withholding of *Low Blood Sugar* could not have

prejudiced Zaczek's claims so as to constitute denial of access to the courts.

## II.

In July 1977 Zaczek was charged with refusing to work, an "institutional offense." In defense, he alleged that a liver condition incapacitated him. At a July 14[1] Adjustment Committee (Committee) hearing Dr. Amonette, the physician at Bland, opined that Zaczek did not suffer from the asserted impairment; however, the doctor would not offer this as a conclusive determination without additional physical examination and certain laboratory tests. The Committee therefore adjourned to permit the doctor to perform whatever tests and examination he deemed necessary.

On July 19 the doctor examined Zaczek. He also attempted to draw blood for tests, but Zaczek refused to cooperate. Dr. Amonette then forwarded a report to the Committee noting this fact, and stating that his conclusion from the physical examination was that Zaczek was able to work. Later that day, apparently after the doctor's departure, Zaczek consented to the blood test; however, Mr. Hylton, the head nurse at Bland, mishandled the sample and it was not sent to the laboratory. As Zaczek was scheduled to go to Southwestern State Hospital for an evaluation on July 20, Dr. Amonette decided to request that institution to perform the tests.

Just prior to Zaczek's departure for Southwestern State Hospital on July 20, the Committee reconvened. Although the tests originally recommended by Amonette were yet to be performed, the Committee rejected further delay, choosing to rely on the physical evaluation. It found Zaczek guilty of the offense charged and sentenced him to fifteen days in isolation. He did not begin his isolation term until he returned from Southwestern State, more than one week later. In the interim the tests results, confirming the doctor's evaluation, arrived.

Ruling for Zaczek in his 42 U.S.C. § 1983 suit, the District Court found three faults with the Committee's procedures: Zaczek was summoned to the reconvened hearing without advance notice; he was precluded from offering certain evidence; and the hearing was concluded without awaiting the test results. Because we disagree with the conclusions drawn from these facts by the District Court, we reverse.

■ *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), mandates written notice, at least twenty-four hours in advance, to disciplinary action defendants. Such notice is intended to "inform him of the charges and to enable him to marshal the facts and prepare a defense," *id.* at 564, 94 S.Ct. at 2979. Zaczek does not complain of the adequacy of notice given him before the commencement of the hearing on July 14, and we cannot agree with his contention that he was entitled to an entirely new notice before the hearing was reconvened on July 20. The original hearing was adjourned solely to permit additional medical evaluation by Dr. Amonette; it was reconvened solely to receive the doctor's report. Zaczek was apprised of the charge against him and presumably had prepared his defense. Surely he could not have insisted on additional notice had the Committee merely adjourned for an hour to permit the physical examination, and then reconvened; no prejudice inheres in the longer hiatus that occurred in this case. We therefore hold that the District Court erred in concluding that the Committee deprived Zaczek of adequate notice.

The District Court also found the Committee's proceedings infirm because Zaczek was precluded from offering certain evidence at the original and reconvened hearings. *Wolff*, however, preserves prison officials' "necessary discretion to keep the hearing within reasonable limits." 418 U.S. at 566, 94 S.Ct. at 2980. The latitude accorded by *Wolff* is considerable:

---

1. The record and the opinions filed by the District Court reflect some confusion as to whether the initial hearing occurred on July 14 or July 19. The earlier date appears, from our consideration of the record, to be correct, and this view accords with the District Court's last opinion.

*Although we do not prescribe it,* it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.... [W]e stop short of imposing a more demanding rule with respect to witnesses and documents.

*Id.* at 566–67, 94 S.Ct. at 2980 (accent supplied). The discretion to curtail confrontation and cross-examination, whether of prisoners or of prison authorities, is even broader. *Id.* at 567–69, 94 S.Ct. at 2980–81. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), reminds us emphatically that prison officials' judgments in these matters are not to be preempted by requiring "grounds that appeal to judges." *Id.* at 322, 96 S.Ct. at 1560.

■ The Adjustment Committee did not abuse its discretion in determining that it had before it sufficient evidence without further presentations by Zaczek. As far as can be determined, he did not deny that he had refused to work; only his medical condition was in dispute. At the July 14 session he was permitted to cross-examine Dr. Amonette and Nurse Hylton for some forty minutes. Hylton was present at the July 20 session to read the doctor's report, and was available for questioning. Asked at trial what witnesses or evidence he was denied at the second session, Zaczek responded "just Doctor Amonette and the results of the laboratory analysis, the blood tests." We cannot say that the Committee's refusal at this point to summon the doctor was an abuse of its discretion.

■ A final defect found by the District Court in the Committee's actions was that it "ignored its own reason" for adjourning the hearing, reaching its decision without the benefit of the test results. At trial Dr. Amonette testified that, while the tests were a precaution, he was willing to give his professional opinion without them, and that this was the intended import of his report to the Committee. This is apparently how the Committee interpreted it. The Court in *Wolff* recognized that for some prisoners, "it may be essential that discipline be swift and sure"; it therefore resisted "encasing the disciplinary procedures in an inflexible constitutional straight-jacket." 418 U.S. at 563, 94 S.Ct. at 2978. The Committee was entitled to rely on the doctor's opinion, and its desire to act on it and pass judgment without further delay may well have been influenced by Zaczek's dilatory and uncooperative behavior. In these circumstances the Committee's decision was not an abuse of its discretion.

■ In addition to the above-noted reasons for reversal, we hold that the District Court erred in finding that appellants did not act in good faith. In holding that appellants "knew or reasonably should have known" that their actions contravened *Wolff,* the District Court took a simplistic view of the mandates of that case. If, contrary to our discussion above, the Committee overstepped the power conferred on it by *Wolff* to limit and shape the disciplinary hearing, its transgressions were not so obvious as to justify the conclusion of bad faith and attendant loss of immunity.

For the reasons set out above, the judgments in 78–6163 and 78–6445 are

Reversed.