**Charles SMITH, Plaintiff-Appellant,**

v.

**Fulton RABALAIS, Jr., et al.,
Defendants-Appellees.**

No. 80–3587.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 15, 1981.

\* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Professor George M. Strickler, New Orleans, La. (Court-appointed), for plaintiff-appellant.

J. Marvin Montgomery, Asst. Atty. Gen., Baton Rouge, La., S. Dwayne Broussard, Staff Atty., Dept. of Justice, Baton Rouge, La., for defendants-appellees.

Before CHARLES CLARK, TATE and SAM D. JOHNSON, Circuit Judges.

TATE, Circuit Judge:

The plaintiff, Charles Smith, an inmate at Louisiana State Penitentiary at Angola, appeals from summary judgment dismissing with prejudice his petition for habeas relief[1] and for damages for violation of his civil rights pursuant to the provisions of 42 U.S.C. § 1983.[2] Contending that the district judge erred in granting defendant's motion for summary judgment, Smith claims that the factual findings show that he was found guilty of dealing in narcotics and was transferred to cell block lockdown in violation of his constitutional rights. Smith alleges that he did not receive a fair and impartial prison disciplinary board

---

1. Smith's request for habeas and injunctive relief has been made moot by his subsequent return to the general prison population on October 31, 1978.

2. Smith alleges a violation of his civil rights. Under the liberal interpretation given to pro se prisoner complaints, the present complaint presents a claim cognizable under 42 U.S.C.

§ 1983. The plaintiff-appellant's supplemental brief, filed on his behalf by the Tulane Law School Appellate Advocacy Program, argued a possible eighth amendment violation; however, Smith's pro se complaint in the district court cannot be read so liberally as to include this claim.

hearing because (1) under a claim of protecting prison security, he was apprised of neither the specific facts nor other circumstances whereby the confidential informant witnessed the incident for which he was disciplined, and (2) the evidence was not sufficient to support the board's decision. We find the disciplinary board, under the exceptional circumstances present in this case, did not abuse its discretion to conduct disciplinary procedures in a manner necessary to protect the security of the prison and, therefore, affirm.

*Facts*

In late September 1977, Charles Smith, an inmate at Angola, requested and was granted an interview [3] with a penologist for the Louisiana Department of Corrections. At this time Smith alleged that he had been "harassed" by a defendant, Captain Fulton Rabalais, a correctional officer at Angola.[4] No proceeding had been filed against Smith at this time.

Subsequently, on December 1, 1977 Rabalais filed an incident report in which he claimed to have "received information, from several reliable informers" that inmate Charles Smith was one of the "main narcotic dealers on the trusty yard" and that he was involved in the "sale and distribution of pills on the walk." The incident report further stated that the informers from whom Rabalais received his information were "very reliable and [had] been in the past, very reliable, and had first hand knowledge of inmate Smith's involvement in the drug traffic on this yard." Smith was therefore placed in administrative lockdown.

Smith appeared at a hearing conducted by the prison Disciplinary Board, composed of prison employees, to respond to the incident charge filed by Rabalais, to which Smith had pleaded not guilty. On December 12, 1977,[5] in accordance with prison disciplinary procedures, Smith was found guilty of "dealing in narcotics"[6] and was transferred to cell block lockdown, maximum security.

At the December 12 hearing Rabalais, the only witness, testified solely on the basis of information provided to him by a confidential informant. He further testified as to the reliability and firsthand knowledge of the informant, but he consistently refused to reveal the identity or any information which he claimed would reveal the identity of his informant to inmate Smith (i. e., dates, places, times, persons involved, number of alleged sales witnessed, description of drugs.) Smith, through inmate counsel, was allowed to cross-examine Rabalais.[7] However, in the interest of prison security, Rabalais continued to refuse to reveal any information which would pinpoint the identity of a confidential informant or, even, the circumstances of the alleged drug transaction(s). The reason advanced was that to do so would permit identification of the inmate informers and (by implication) thus submit them to fatal prisoner reprisal. The hearing board upheld Rabalais' refusal to provide further particulars.

Smith was not barred from calling witnesses and producing evidence in his own behalf, but, in fact, produced no witnesses. Smith claimed that, as he was unable to

---

**3.** Smith was interviewed by Maudrie S. Mitchell on Oct. 12, 1977 and a report was filed Oct. 17, 1977. Later interview reports were filed Dec. 30, 1977, March 29, 1978, and June 13, 1978.

**4.** Smith later alleged in his complaint that between Sept. 20 and 28, 1977 Rabalais had accused him of dealing drugs on the minimum security yard.

**5.** The hearing was initially set for Dec. 5, 1977 but was delayed a week to allow Smith the opportunity to confront Rabalais at the hearing.

**6.** In a statement of facts filed with the district court the defendants state that the plaintiff was provided with a written statement of the evidence relied on at the disciplinary hearing and the reason for the action taken. The statement does not appear in the record; however, in his complaint, Smith did not complain that the required written statement was not provided.

**7.** *Wolff,* see text at section I, *infra,* does not require cross-examination, but the rules promulgated by the Louisiana Department of Corrections do allow this right.

elicit any more facts on the charge, he could not properly present alibi witnesses or opposing evidence.

Smith's administrative appeal to the Secretary of Corrections was denied on February 1, 1978.[8] A subsequent application for rehearing was also denied March 13, 1978. During this time Smith remained in lockdown, where his case was reviewed every ninety days by the Lockdown Review Board. During this period Smith alleges he received no "write-ups" or complaints from prison officials. (On October 31, 1978, subsequent to filing this suit, he was transferred from lockdown to the general prison population.)

On May 12, 1978 Smith filed the present pro se complaint in the federal district court, claiming that he had been denied a fair and impartial disciplinary hearing. The district judge granted the defendants' motion for summary judgment, and the plaintiff Smith's suit was dismissed with prejudice on June 23, 1980.

*The Issues*

Smith alleges in his complaint that his civil rights were violated and he did not receive a fair and impartial disciplinary board hearing because (1) of the denial of any opportunity to test the accusatory information furnished by confidential informants and, (2) the board's decision was based on insufficient evidence. The plaintiff's argument at the disciplinary hearing and in brief indicates that the refusal to reveal the identity of the confidential informant, or to reveal any specific information concerning the alleged violations, accounts in large measure for the lack of substantial evidence to justify the court's decision.

## I. The Standard of Due Process for Prison Disciplinary Hearings Under Wolff v. McDonnell.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court, while indicating reluctance to review the judgment of prison administrators, *id.* 418 U.S. at 566, 94 S.Ct. at 2979, and while acknowledging that prison disciplinary proceedings do not require the "full panoply of rights" due a defendant in a criminal proceeding, *id.* 418 U.S. at 556, 94 S.Ct. at 2975, set forth positive minimum requirements of procedural due process which should be accorded prisoners:[9] (1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken;[10] (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals. *Id.* 418 U.S. at 563–67, 94 S.Ct. at 2976–80. By his first argument Smith appears to assert a violation of the first and third due process requirements established in *Wolff*. Smith claims that failure of prison officials to provide him with specific acts of sale, time, place, and date rendered the written notice of the charges so vague as to preclude a defense and for this reason he was effectively denied the right to call witnesses and present evidence in his behalf.

■ A prisoner, by the very nature of his confinement, is afforded diminished rights and privileges provided to all citizens, but is "not wholly stripped of constitutional protections." *Wolff, supra,* 418 U.S. at 555, 94 S.Ct. at 2974 (and citations collected therein). Although the courts have been

---

**8.** No contention is made that Smith, having exhausted state administrative remedies, was also required to seek relief from the state court before initiating this § 1983 suit. See *Courtney v. Reeves,* 635 F.2d 326, 328 (5th Cir. 1981); *Streeter v. Hopper,* 618 F.2d 1178, 1181 (5th Cir. 1980). Cf. *Patsy v. Florida Intern. University,* 634 F.2d 900, 910 (5th Cir. 1981).

**9.** While *Wolff* involved a disciplinary hearing prior to the deprivation of "good time" credits,

it is not contested that the same due process considerations apply to disciplinary hearings involving punishment by confinement to maximum security. See *Wolff,* 418 U.S. at 556–57, 94 S.Ct. at 2975; cf. *Meachum v. Fano,* 427 U.S. 215, 226–27, 96 S.Ct. 2532, 2539–40, 49 L.Ed.2d 451 (1976).

**10.** The procedure was followed in this case.

careful to protect due process rights of inmates, such rights are subject to restrictions when balanced against the exceptional needs of prison society. *Id.* at 566, 2980.

Transfer to maximum security, obviously a deprivation of "liberty" [11] and unquestionably a matter of serious importance entitling an inmate to minimal due process, does not present the same immediate disaster as the revocation of parole, *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972), *Wolff, supra*, 418 U.S. at 560, 94 S.Ct. at 2977, or initial incarceration, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■ The very nature of due process precludes establishing an inflexible [12] procedure applying without variation to vastly variegated situations. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with the determination of the precise nature of the government function involved, as well as the private interest that has been affected by government action." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961). In weighing the interest presented here, we begin with the realization that

> [p]rison disciplinary proceedings, on the other hand, take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so . . . we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock. Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

11. *Wolff*, 418 U.S. at 556–57, 94 S.Ct. at 2975.

12. *Greenholtz v. Inmates of Nebraska Penal & Cor.*, 442 U.S. 1, 11, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) and citations therein.

*Wolff, supra*, 418 U.S. at 561–62, 94 S.Ct. at 2977.

Smith points out the Supreme Court's declaration that the function of notice is "to inform him of the charges and to enable him to marshal the facts and prepare a defense," *Wolff, supra*, 418 U.S. at 564, 94 S.Ct. at 2979. He asserts that the defendants' refusal to provide sufficient details of the charges (date, place, time, number of violations) is in direct contravention of the Court's dictates.

■ The information was demanded for the stated purpose of providing alibi or defense witnesses and presenting documentary evidence in Smith's defense. This right, however, is not unqualified in a prison disciplinary setting. As the Supreme Court stated, the right shall be allowed *"when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.* Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries *obvious potential for disruption* and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff, supra*, 418 U.S. at 566, 94 S.Ct. at 2979 (emphasis added).

■ Likewise, the right of confrontation and cross-examination,[13] inherent in the American system of justice, is necessarily placed "on a different footing," *Baxter v. Palmigiano*, 425 U.S. 308, 321–23, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976), in a prison disciplinary hearing due to the inherent dangers and greater hazards presented to the prison system. *Id.* 425 U.S. at 321–23, 96 S.Ct. at 1559–60, *Wolff, supra*, 418 U.S. at 567–70, 94 S.Ct. at 2980–81. Prison officials need discretion "to limit access to other inmates to collect statements or to compile other documentary evidence."

13. However, Smith was allowed at least a limited cross-examination of Rabalais.

*Wolff, supra,* 418 U.S. at 266, 94 S.Ct. at 2980, and are not required to state specific reasons for refusing to provide that certain witnesses be called. *Baxter, supra,* 425 U.S. at 322, 96 S.Ct. at 1560.

In the case before us the defendant Rabalais presented the only testimony, based solely on the reports of confidential informants. Repeated requests by Smith (through inmate counsel) for any details were met by Rabalais' refusal on the grounds of prison security, to prevent pinpointing of any confidential informant. The disciplinary board sustained all refusals on the same grounds. Both the inmate Smith and the defendant Rabalais acknowledged that Smith was under fairly constant restriction; however, the conclusions drawn from this fact are quite different. Smith claims he was under constant supervision by Rabalais and therefore unable to deal in drugs. Rabalais appears to claim that, due to the close restriction of the inmates, any specific information provided to Smith would enable him to pinpoint the informant. It is necessary to note here the exceptional nature of the information requested: all facts, which under the particular circumstance of this case could lead to the unwarranted identification of the confidential informant—with possible fatal consequence to him—were likewise the very facts needed by Smith to determine if he could establish an alibi for the time, place or date.

The courts, reluctant to restrict the basic rights of individual citizens, including inmates, nevertheless have recognized that the present [14] prison system may occasionally require that broad discretion be placed with prison officials. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979); *Wolff, supra,* 418 U.S. at 569, 94 S.Ct. at 2981. "The latitude accorded by *Wolff* is considerable: ... The discretion to curtail confrontation and cross-examination, whether of prisoners or of prison authorities, is even broader." *Zaczek v. Hut-*

*to,* 642 F.2d 74, 76–77 (4th Cir. 1981), citing *Wolff,* 418 U.S. at 567–69, 94 S.Ct. at 2980; *Hurney v. Carver,* 602 F.2d 993, 995 (1st Cir. 1979). With regard to the very issue implicated by Smith's troubling arguments, the Court in *Wolff* pointed out that to accord confrontation and cross-examination rights with regard to information furnished by "an unknown fellow inmate" would through "the disclosure of the identity of the accused ... pose a high risk of reprisal within the institution." 418 U.S. at 568, 94 S.Ct. at 2981. Pointing out the complexities of the issue, including those resulting from "the disclosure of third parties" even where the identity of the testifying accuser is known, the Court concluded that "[t]he better course at this time, in a period when prison practices are diverse and somewhat experimental, is to leave these matters [the according of confrontation and cross-examination rights] to the sound discretion of the officials of state prisons." *Wolff, supra,* 418 U.S. at 569, 94 S.Ct. at 2981.

■ In the exceptional situation before us, we hold that in balancing the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution" [15] the defendant prison officials did not abuse their discretion in refusing to require Rabalais to provide inmate Smith the specific information requested.

■ Given the limitations imposed by prison security and protection of the lives of inmate confidential informers, Rabalais' evidence was, so to speak, the best evidence available to prove this charge. If more were required by federal due process, the prison administration would arguably be faced with a choice either of failing to discipline a prison narcotics dealer or else of endangering the life of an inmate informer. In our view, the federal constitution does not require us to impose that choice upon the state prison administration, although

14. The Court recognized in *Wolff* that as the prison disciplinary process changes there may be a need to reconsider the procedures required. 418 U.S. at 572, 94 S.Ct. at 2982.

15. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975.

quite possibly. (see note 20) state judicial review might require more safeguards against the potential abuse where anonymous and merely generalized accusations form the sole basis for disciplinary action against a prison inmate.

## II. *Judicial Standard of Review*

The second issue raised by Smith is that the board's finding of guilt was based on insufficient evidence in that the only testimony was Rabalais' unsupported [16] and generalized testimony based entirely on information from an unidentified prison informant, the details of which he revealed neither at the formal hearing nor in camera to the board itself. Smith alleges that, at the least, summary judgment was improper, as he claimed factual innocence of the charge, and that an evidentiary hearing should have been afforded by the federal district court whereby Smith could have had an opportunity to disprove the incident upon which the disciplinary action was based.

■■■ Although the courts are required to recognize a constitutional duty to protect prisoners' rights,[17] nevertheless "[t]he Supreme Court has articulated for the federal courts a policy of minimum intrusion into the affairs of state prison administration; state prison officials enjoy wide discretion in the operation of state penal institutions." *Williams v. Edwards,* 547 F.2d 1206, 1212 (5th Cir. 1977); *Campbell v. Beto,* 460 F.2d 765, 767 (5th Cir. 1972); *Breeden v. Jackson,* 457 F.2d 578, 580 (4th Cir. 1972). In reviewing administrative· findings under a federal habeas corpus or a section 1983 complaint, the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion. *Thomas v. Estelle,* 603 F.2d 488, 490 (5th Cir. 1979), *reh. denied,* 606

F.2d 321 (5th Cir. 1979); *Wilwording v. Swenson,* 502 F.2d 844, 851 (8th Cir. 1974), *cert. denied,* 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843 (1975); *U. S. v. Smith,* 464 F.2d 194, 196 (10th Cir.), *cert. denied,* 409 U.S. 1066, 93 S.Ct. 566, 34 L.Ed.2d 519 (1972).[18] The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"— "whether any evidence at all" supports the action taken by the prison officials. *Willis v. Ciccone,* 506 F.2d 1011, 1018, 1019 n. 11 (8th Cir. 1974).

The Court in *Wolff,* realizing the problems of judicial review, stated that it would be useful, though not required, for the board to state its reasons for refusing to allow an inmate to call witnesses in his defense, "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff, supra,* 418 U.S. at 566, 94 S.Ct. at 2980. In *Baxter,* the Court reiterated the need for some written statement as to the evidence relied on and reasons for the disciplinary action, but it refused to require written reasons denying an inmate the right to confrontation and cross-examination, thus recognizing that mandating such rights in prison disciplinary hearings, "except where prison officials can justify their denial on one or more grounds that appeal to judges, effectively preempts the area that *Wolff* left to the sound discretion of prison officials." *Baxter, supra,* 425 U.S. at 322, 96 S.Ct. at 1560.

The inmate Smith directs our attention to *Hayes v. Walker,* 555 F.2d 625 (7th Cir. 1977), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (*Hayes I*) and *Hayes v. Thompson,* 637 F.2d 483 (7th Cir.)

---

**16.** Smith complains that no search was made of his person or cell upon his arrest, no physical evidence was introduced at the hearing and no corroborative testimony was introduced. See also note 20, *infra.*

**17.** *Taylor v. Sterrett,* 532 F.2d 462, 469 (5th Cir. 1976).

**18.** The court in *Aikens v. Lash,* 514 F.2d 55, 60–61 (7th Cir. 1975), *vacated* 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191, *modified* 547 F.2d 372 (7th Cir. 1976), discussed the evidence required. The quantum must be appropriate in the circumstances and allow a determination that the decision was not arbitrary or capricious.

(*Hayes II*).[19] The decisions concern a factually distinguishable situation, although they do contain language favorable to Smith's contentions. Here, the witness Rabalais had testified before the board that he had contact with each informant individually, and that his informant had personally witnessed a transaction. Under the exceptional circumstances of this case, any other specific information possessed by Rabalais that could be required on the record for the purposes of judicial review would be the very information that the prison officials considered vital to the safety of the informer system.

 A standard of proof required, as with other due process rights, is not automatically removed from a prison inmate; however, the standard is necessarily lower than that demanded in criminal, parole-probation, revocation or civil proceedings. The case before us is probably at the presently undefined outer contours of the prison discipline due process rule. Nevertheless, we hold that—insofar as *mandated* by the federal constitution [20]—under the circumstances here presented, the prison board's finding that Smith was guilty of the charge based on the generalized testimony of Rabalais did not constitute an arbitrary and capricious exercise of its discretionary disciplinary function sufficient to give rise to a claim by Smith of a federal violation of the federal constitution. The transcript of the administrative hearing indicates that the board's decision was based not only on the initial investigation report but also on testimony by the defendant Rabalais. The board had repeatedly sustained Rabalais' refusal to divulge specific information to Smith in the interest of protecting the security of the confidential informers, and, presumably the prison informer system. Rabalais was asked if he knew the informers, if he had used them in the past, and if the informers had firsthand knowledge, and he replied in the affirmative in each instance. In the present state of prison due process law, we cannot say that more is constitutionally mandated under the exceptional circumstances of this case.

Since under the particularized circumstances due process required no more as a matter of law, summary judgment was properly granted, Fed.R.Civ.P. 56; for no disputed issues of fact material to this litigation required an evidentiary hearing.

**19.** Smith also relies on the district court decision in *Ruiz v. Estelle*, 503 F.Supp. 1265 (S.D. Texas 1980). The procedures at issue in *Ruiz* allowed such vague charges as "General Agitation" or "Disrespectful Attitude," *id.* at 1351, and the imposition of punishment with no statement of rationale, *id.* at 1353. Although the procedures we affirm today are the exception, the board has defined its reason (protection of the prison security and informer system) for not requiring Rabalais to provide specific data. We recognize the danger involved when a prison informer's identity is revealed. *See Gullatte v. Potts*, 654 F.2d 1007 (5th Cir. 1981).

**20.** Were we a state court exercising supervisory jurisdiction to review state administrative determinations and procedures, we might well attempt to provide more safeguards against administrative actions based on information withheld from a prisoner against whom the action is taken. The issue before us, however, is whether the federal constitution requires that a state regulate the administration of prison discipline in such a manner.

In hesitantly holding that the present hearing did not transgress the minimal due process required by the federal constitution to be accorded the prisoner under the present circumstances, we point to the following factors that under state judicial administrative review, *Armistead v. Phelps*, 365 So.2d 468 (La.1978), might be viewed as placing a duty on the prison disciplinary board to make a more thorough inquiry into the factual incident with which the prisoner was charged:

(1) Some physical evidence of this charge would normally be expected and could perhaps have been obtained, but the obvious effort was not made;

(2) The prison guard's testimony was based entirely on the word of confidential informants, not substantiated in any way;

(3) The testimony of this sole accusing guard contains at least one significant inconsistency;

(4) The disciplinary board made no inquiry into the details of the confidential information, even out of the prisoners' presence—thus the board had no more knowledge of the informers than did the prisoner Smith; and

(5) A revenge motivation on the part of the guard was quite plausible (the disciplinary board may not have been aware of this). ·

*Conclusion*

Accordingly, we find that under the undisputed factual showing in this case, the prison disciplinary board did not, as a matter of law, abuse its discretion. The defendants were therefore entitled to the motion for summary judgment; consequently, we AFFIRM the district court's dismissal with prejudice of plaintiff's suit.

AFFIRMED.