786 F.2d 1166
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TIMOTHY REED, Plaintiff-Appellant,
vs.
A.R. JAGO, L.E. RUPP, R.C. MARSHALL, S. SISSEL, C. THOMPSON,
R. ADAMS, I. FERGUSON, J. KERNS, C. KENNEDY and W.
NEMETH,Defendants-Appellees.
 83-3476
 United States Court of Appeals, Sixth Circuit.
 2/25/86
 
 S.D.Ohio
 AFFIRMED
 On Appeal from the United States District Court for the Southern District of Ohio
 Before: KEITH and GUY, Circuit Judges; and TAYLOR, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Reed appeals from a summary judgment granted to defendants resulting in the dismissal of his 42 U.S.C. Sec. 1983 complaint against prison officials. This June 7, 1983 summary judgment was preceded by an earlier summary judgment motion, as well as by the filing of an amended complaint by the plaintiff. The motion and amended complaint had the effect of narrowing and further defining the issues raised so that at the time this summary judgment motion was filed, there were four claims of the plaintiff remaining:
 
 
 2
 1. Improper medical treatment for burns.
 
 
 3
 2. Improper medical treatment for weight loss.
 
 
 4
 3. Cruel and unusual punishment resulting from having to wear leg irons and handcuffs while being treated in the infirmary.
 
 
 5
 4. Prison officials 'setting up' plaintiff for a rules infraction.
 
 
 6
 Pursuant to a seriatim examination of these claims, this court concludes that the district court's granting of summary judgment was appropriate and we affirm.[1]
 
 I.
 Improper Medical Treatment for Burns
 
 7
 On November 19, 1979, plaintiff was burned when heated shoe polish was thrown on him by another inmate. Although plaintiff was taken to the infirmary within 15 minutes of this incident, he did not see a medical doctor for seven days, and this is the primary basis for his complaint. Plaintiff does not allege any permanent adverse sequelae, and specifically stated in his memorandum in opposition to defendant's summary judgment motion that his complaint 'is not an attack on the 'adequacy' of the treatment inasmuch as it attacks the delay of the treatment' (App. at 148).
 
 
 8
 'In order to state a Sec. 1983 claim for relief for denial of medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' Estelle v. Gamble, 429 U.S. 97, 106 (1976).
 
 
 9
 The record before the trial judge at the time he granted the motion for summary judgment conclusively demonstrates that plaintiff cannot meet the 'deliberate indifference' standard. He was transported to the prison infirmary within 15 minutes of the burn incident and refused treatment. He was returned to his cell and was there treated by a nurse who applied Silvadene cream to the burned areas. This treatment was repeated by a nurse for the next two days, during which time period she discussed plaintiff's burns with a doctor. Plaintiff was readmitted to the infirmary two days after the incident and the Silvadene treatment was continued. He also was given pain medicine. A hematology test was run. The application of burn ointment continued and, on November 26, plaintiff was examined by a physician who continued him on the same treatment until December 2 when he was returned to his cell. Seven days later he was again examined by a doctor who noted neither an infection nor any other complications. The record is thus devoid of any lapse in treatment or treatment procedures which would meet the Estelle threshold.
 
 II.
 Improper Medical Treatment for Weight Loss
 
 10
 Plaintiff received a comprehensive medical examination in 1978. At that time he weighed 179 pounds. One year later his weight had dropped to 174 pounds. Other than reflecting the fact of this five pound weight loss, the record provides little information as to how this was in any way a result of deliberate indifference to medical needs or a result of any other action or inaction cognizable in a Sec. 1983 claim. Plaintiff in his brief appears to argue that this weight loss is a result of extended confinement in maximum security and a lack of outside recreation. There is no claim made, however, that plaintiff's treatment as a maximum security risk violates any of his constitutional rights. The mere fact of a five-pound weight loss, still leaving the plaintiff at a normal weight for his height and age, would not ground a constitutional deprivation complaint. Furthermore, after plaintiff complained of a weight loss, he was ordered weighed on a weekly basis by the doctor. Additionally, when he was treated in late 1979 for his burn injury, he was seen by physicians who noted no general deterioration or other medical condition requiring attention apart from the burns. Under these circumstances, this claim was appropriately subject to summary judgment.
 
 III.
 
 11
 Cruel and Unusual Punishment Resulting From Having to Wear Leg Irons and Handcuffs While Being Treated in the Infirmary
 
 
 12
 On February 7, 1973, plaintiff was transferred from the Chillicothe Correctional Institute to the Southern Ohio Correctional Facility. Later that day he attempted to hit one correctional officer, but his blow instead struck Captain Esta Allen in the face with such force that Allen was knocked backward to the floor on which he struck his head. Captain Allen was later diagnosed as having received a hair-line fracture of the skull, a fractured palate, and fractured facial bones (App. 92). Plaintiff was later convicted of wounding an officer as a result of this attack and received a consecutive sentence of from one to five years which was added to his 11 to 30 year sentence for armed robbery (App. 94).
 
 
 13
 On February 20, 1974, plaintiff attacked and stabbed a correctional officer with a piece of stainless steel rod (App. 95). On December 14, 1975, plaintiff threw a cup of urine in the face of a correctional officer who came to plaintiff's assistance when plaintiff asked him to talk about a medical problem plaintiff claimed he had (App. 96, 97).
 
 
 14
 On December 21, 1975, plaintiff threatened and then threw his food tray at an inmate porter who brought him his meal. The tray struck the porter (App. 99, 100). On September 25, 1976, plaintiff struck and injured a correctional officer with a broom (App. 102, 103, 104). On May 6, 1977, and while handcuffed, plaintiff got into an argument with another inmate. Plaintiff then struck the other inmate (App. 107, 108). On September 4, 1978, plaintiff was ready to strike another inmate porter with a mop when a correctional officer interceded. Plaintiff swore at the officer and refused to give him the mop (App. 110). Plaintiff later tried to strike another inmate porter with a stick when the porter was handing him toilet paper (App. 111). Seven months later plaintiff cut an inmate porter with a razor blade (App. 112, 113).
 
 
 15
 Based upon plaintiff's continuous assaultive conduct toward staff and fellow inmates, it was necessary to keep plaintiff almost continuously in segregated confinement (App. 81-82). Since the prison infirmary is neither a segregated nor maximum security area, there can be little doubt as to the reason why plaintiff was kept in leg irons and handcuffs while there. This was certainly an appropriate exercise of the discretion afforded to prison officials and would in no way amount to an actionable constitutional infringement.
 
 IV.
 
 16
 Prison Officials 'Setting Up' Plaintiff for a Rules Infraction
 
 
 17
 On May 1, 1979, plaintiff was cited for a rule infraction when he appeared naked at his cell door while a female nurse was making a regularly scheduled visit to the cell block.
 
 
 18
 It is the practice at the Southern Ohio Correctional Facility for medical personnel to dispense medication to the administrative control area during regularly scheduled times of the day. If a female is dispensing the medication, it is also the practice for the cell block officer to inform the inmates so they will be properly clothed, as is required. It is plaintiff's claim that he did not receive notification of a female in the cell block and thus was 'set up' for a rules infraction. In order to put this claim in proper perspective, it is necessary to review other events occurring at or near this same time and date.
 
 
 19
 May 1, 1979 was an eventful day for the plaintiff. At 5:35 P.M. on that date, plaintiff was issued a rules infraction ticket for throwing a cup of liquid on correctional officer Thompson. At 7:36 P.M. he received the aforementioned citation from officer Adams for appearing naked. At 8:30 P.M. he swore at, used abusive language toward, and threatened officer Adams. Plaintiff also said he would not wear clothes when females were in the cell block. Again, plaintiff was ticketed for rules violations.
 
 
 20
 The events of May 1, 1979 resulted in plaintiff receiving a verbal reprimand for some of his conduct. The more serious infractions were made the subject of a hearing with notice before the Rules Infraction Board. At the hearing, evidence was presented and the Board found plaintiff guilty of some but not all of the charged infractions. One of the guilty decisions related to the nurse incident. Plaintiff made no claim in his complaint that he had been denied procedural due process. Wolff v. McDonnell, 418 U.S. 539 (1974). Plaintiff, in effect, complains of the fact that the Board believed the correctional officers who testified rather than him. Although issues of credibility are not normally resolvable on summary judgment motions, the district court here never had to reach that issue, since where no procedural due process violations are implicated, the credibility determinations made by a prison disciplinary review board are not reviewable under 42 U.S.C. Sec. 1983.
 
 
 21
 We begin our analysis by noting that the role of the federal courts in reviewing prison proceedings is a narrow one. 'The Supreme Court has articulated for the federal courts a policy of minimum intrusion into the affairs of state prison administration; state prison officials enjoy wide discretion in the operation of state penal institutions.' Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974); Williams v. Edwards, 547 F.2d 1206, 1212 (5th Cir. 1977). In reviewing prison administrative actions in section 1983 actions, the court must uphold the administrative decision unless it was arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981). Further, courts need not review a disciplinary board's factual findings de novo, but need consider only whether the decision is supported by 'some facts' or 'any evidence at all.' Id., quoting Willis v. Ciccone, 506 F.2d 1011 (8th Cir. 1974). If the state provides a procedurally adequate hearing, it does not deprive an inmate of constitutional rights, because the constitution guarantees only the right to be free from deprivation of life, liberty or property without due process. Armstead v. Louisiana, 714 F.2d 360 (5th Cir. 1983).
 
 
 22
 Stewart v. Thigpen, 730 F.2d 1002, 1005-06 (5th Cir. 1984).
 
 V.
 
 23
 There is no doubt that plaintiff's pro se pleadings in a civil rights case are held to less stringent standards.[2] There is also no doubt that on a motion for summary judgment the movant has the burden of conclusively showing that there exists no genuine issue as to a material fact, and the evidence together with all reasonable inferences to be drawn therefrom must be read in the light most favorable to the party opposing it.[3]
 
 
 24
 Notwithstanding these strict standards, however, we conclude that summary judgment was appropriate here. The complaint, although filed pro se, was filed by a plaintiff with considerable litigation experience and whose complaints and briefs reflect a knowledge of both procedure and substance. Further, Fed. R. Civ. P. 56(e) provides that once a motion is filed and supported by admissible evidence, 'an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing there is a genuine issue for trial.' Here there were no genuine disputes as to material facts and the magistrate was correct in recommending and the trial judge correct in granting summary judgment. We affirm.[4]
 
 
 
 *
 Honorable Anna Diggs-Taylor, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 There are two briefs filed on behalf of plaintiff in this court--one by counsel and one by plaintiff pro se. In the pro se brief, plaintiff suggests there are other issues unresolved, but the record does not support plaintiff's contentions. The brief filed by plaintiff's counsel raises only issues 1, 3 and 4 listed above, not arguing the weight loss issue at all
 
 
 [2]
 Haines v. Kerner, 404 U.S. 519 (1972). It should be noted, however, that Haines deals with a motion to dismiss, not a motion for summary judgment
 
 
 [3]
 Smith v. Hudson, 600 F.2d 60 (6th Cir. 1979)
 
 
 [4]
 Defendants also raise the propriety of certain officials being named as defendants, since they were not in a position to have deprived plaintiff of the constitutional rights alleged. Since we have disposed of this appeal on other grounds, it is not necessary to reach this issue