United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 14, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-21067

---

DANNY RICHARDS,

                                    Petitioner-Appellee,

        versus

DOUG DRETKE, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                                    Respondent-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before GARWOOD, JOLLY and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

        Doug Dretke, Director of the Texas Department of Criminal
Justice, Correctional Institutions Division, appeals a district
court judgment granting a petition for writ of habeas corpus by
inmate Danny Richards (Richards).  The judgment vacated a guilty
finding against Richards in a prison disciplinary hearing.  We
conclude that there is some evidence to support the disciplinary
decision, and accordingly reverse the district court's judgment.

**Facts and Proceedings Below**

Richards has been serving a fifty-year Texas prison sentence since 1989 for possession of a controlled substance. On July 20, 2002, a fight occurred in a day room at the prison in which an inmate named Jerry Rotenberry (Rotenberry) was injured from being hit and kicked. None of the prison's staff witnessed the fight. On August 29, 2002, Richards was notified that he was charged with participating in an assault on Rotenberry during the July 20 fight.[1] A "counsel substitute" assigned to Richards obtained statements from three witnesses Richards named. Richards read two of these statements into the record at the hearing held on August 30, 2002, but did not read the third, from Rotenberry. Richards's counsel substitute admitted at the hearing that Rotenberry's statement was "definitely detrimental to" Richards.

The offense report prepared by the charging officer, Sergeant Burson, was submitted at the hearing. The report includes the statement that "Offender Rotenberry identified offenders Adams, Richards and Formby as the offenders who kicked him while he was on the floor of the dayroom." Sgt. Burson testified at the hearing that he did not witness the assault, and that his conclusion that Richards had been involved in the assault was based on his investigation. Richards was unable to elicit at the hearing the

---

[1] At the time Richards was notified, he signed a waiver of his right to 24-hour notice of the hearing, but the hearing was held more than 24 hours later nonetheless.

name of anyone (other than Rotenberry) who had identified him to Sgt. Burson as having participated in the assault. The hearing officer found Richards guilty and assessed punishment including a loss of thirty days good-time credit. On the hearing record, the hearing officer listed as his evidence and reasons for determination of guilt "Officer's report" (by circling a preprinted option), "officer's live testimony," and "IOC's Sgt Burson STGO and Mr. Knight O.I.G./pictures."[2]

The interoffice communication from Sgt. Burson listed by the hearing officer was a report filed with the district court under seal, to protect the identities of the inmates interviewed by Burson.[3] The report summarizes Sgt. Burson's interviews of twelve inmates, including Richards and Rotenberry. With one exception, the report gives the name, age, race, and nature of the sentence being served for each of the inmates interviewed.[4] Five of the inmates, including Rotenberry, identified Richards as one of Rotenberry's attackers. At least three of these inmates, including Rotenberry, identified Richards using a photo line-up. Five of the inmates, including Richards, though acknowledging being present in the day room during the incident, claimed not to know anything

---

[2]I.O.C. stands for Inter-Office Communication, STGO for Security Threat Group Office, which Sgt. Burson was affiliated with, and O.I.G. for Office of the Inspector General, which Mr. Knight was affiliated with. The "pictures" were apparently photographs of Rotenberry's bruises.

[3]The report is also referred to herein as the "confidential report."

[4]One inmate is identified as a "Confidential Informant," with his age, race and sentence given.

about who was involved.  The other two inmates gave some details about the overall altercation, which had several participants, but apparently did not witness the assault on Rotenberry and gave no information on Rotenberry's assailants.

After exhausting appeals within the prison system, Richards filed a petition for writ of habeas corpus with the district court in November of 2002.  Finding that Sgt. Burson's report did not include information on the reliability of the interviewed inmates or their statements, the court held that due process requirements were not met.  The court granted Richards's petition for writ of habeas corpus and ordered the Department of Criminal Justice to vacate the finding of guilt in the disciplinary hearing, and to either grant a new hearing or reinstate Richards's good-time credit.  Finally, the court granted in part a motion by Richards for discovery in the event of a new hearing, with respect to any statements Rotenberry made to investigating officers.

## Discussion

### I.  *Standard of Review*

With regard to requests for federal habeas corpus relief, we review a district court's findings of fact for clear error and decide issues of law *de novo*.  *Dyer v. Johnson*, 108 F.3d 607, 609 (5th Cir. 1997).  The legal standard for due process in prison disciplinary hearings is that there be "some evidence" to support the disciplinary decision.  *Superintendent, Mass. Correctional*

*Inst. v. Hill*, 105 S.Ct. 2768, 2774 (1985).  Whether there is "some evidence" is an issue of law reviewed *de novo*.  *Hudson v. Johnson*, 242 F.3d 534, 535 (5th Cir. 2001).

## II.  *Due Process in Prison Disciplinary Hearings*

Whether a denial of good-time credits creates a liberty interest protected by procedural due process is determined by state law.  *Hudson*, 242 F.3d at 535–36.  Under the Texas statutory scheme in place at the time of Richards's conviction in 1989, Richards was eligible for release to mandatory supervision at a date determined in part by his accrued good conduct time.  Tex. Code Crim. Proc. Ann. art. 42.18, §8(c) (Vernon 1988).  We therefore assume that Richards has a liberty interest in his good-time credits.  *Malchi v. Thaler*, 211 F.3d 953, 957–58 (5th Cir. 2000).[5]

When there is a protected liberty interest in good-time credit, the United States Supreme Court has held that due process demands only that there be "some evidence" to support a disciplinary officer's decision.  *Superintendent, Mass. Correctional Inst. v. Hill*, 105 S.Ct. 2768, 2774 (1985).  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that

---

[5]A 30-day delay of a mandatory supervision release might be *de minimis* and therefore not give rise to a due process claim.  The *Malchi* court held that while a few days might be *de minimis*, six months was not.  *Malchi*, 211 F.3d at 958. That issue, however, is not before us as it has not been raised by Dretke, who has not contested Richards's liberty interest or that he would be entitled to some federal habeas relief if there were not the requisite "some evidence" to support the disciplinary decision or if the proceedings otherwise violated his due process rights.

have some basis in fact." *Id.* The Court noted that a reviewing court is not required to examine the entire record of a proceeding, independently assess witness credibility, or weigh the evidence. *Id.* Minimum procedures that must be followed in disciplinary hearings include 1) providing advance written notice to the accused of the claimed violation, 2) providing a written statement by the factfinder of the evidence relied upon and reasons for the disciplinary action taken, and 3) allowing the accused inmate to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 94 S.Ct. 2963, 2979 (1974).

## III. Richards's Disciplinary Hearing

In holding that Richards was denied due process based on a finding that Sgt. Burson's confidential report did not include information on the reliability of the inmates interviewed, the district court apparently applied a standard imposed when guilty findings are based on the word of confidential informants. In this circuit and others, "some evidence" must constitute more than information from a confidential informant, when no evidence is presented to the disciplinary official tending to support the informant's reliability. *Broussard v. Johnson*, 253 F.3d 874, 876–77 (5th Cir. 2001). Testimony as to the reliability of a confidential informant and the informant's firsthand knowledge can

6

be sufficient evidence of the informant's reliability. *Smith v. Rabalais*, 659 F.2d 539, 541, 546 (5th Cir. 1981). An identification of an accused inmate in a written report by an officer who witnessed the infraction can also be sufficient evidence to support a finding of guilt. *Hudson v. Johnson* 242 F.3d 534, 536–37 (5th Cir. 2001).

The problem with application of this reliability standard in the instant appeal is that Richards was not found guilty based on the word of confidential informants. Although the identities of the interviewed inmates were withheld from Richards for their protection, the investigating officer knew all of the inmates' identities and the hearing officer knew all but one.[6] This is in contrast to the situation in *Broussard*, in which neither the investigating officer nor the hearing officer knew the identity of a confidential informant (known only to the warden) accusing the disciplined inmate. *Broussard*, 253 F.3d at 875. Because most of the inmates interviewed by Sgt. Burson were not "confidential" with respect to either the hearing officer or Sgt. Burson, it is not clear that the reliability determination described in *Broussard* is required in the case of Richards's hearing. *Id.* at 876.

---

[6]The district court was unsure whether Sgt. Burson's report was submitted to the hearing officer. However, both the hearing officer's written record of the disciplinary hearing and his statement on the hearing tape cite an interoffice communication from Sgt. Burson as being among the evidence considered. The only interoffice communication from Sgt. Burson in the record is the confidential report.

Even to the extent a reliability determination might be needed, the confidential report contains sufficient indicia of reliability. Contrary to the district court's finding, the report does contain information that could be used by the hearing officer in assessing reliability of the interviewed inmates. For example, because Sgt. Burson's report describes the fight as being between black and white inmates, the information provided as to the race of each inmate interviewed may be relevant to reliability in this case. The report further indicates that each interviewed inmate was present in the day room during the fight and therefore had firsthand knowledge. Firsthand knowledge is an indicator of reliability. *Smith*, 659 F.2d at 541, 546. Moreover, the multiple inmate statements implicating Richards tend to corroborate each other on various details of the fight, such as the specific argument that set off the fight, which inmates it started with, and the sequence of the inmates involved. Some of these details are further corroborated by the statements of the two inmates who had information on parts of the fight but not specifically on the assault on Rotenberry. Multiple corroborating accounts have also been recognized as an indicator of reliability. *Wells v. Israel*, 854 F.2d 995, 1000 (7th Cir. 1988) ("[L]etters from different inmates corroborate and confirm material details.").

Not only is the confidential report "some evidence" in support of Richards's guilty finding, but there is other evidence as well.

In the witness statements he submitted at the disciplinary hearing and in his briefs to the district and appellate courts, Richards makes clear that the fight did take place on the date in question in the day room, and that he was present at the time. Richards further admits that Rotenberry has identified him as an assailant. Richards disputes Rotenberry's credibility on the ground that Rotenberry did not identify Richards immediately after the fight, but a month later after Sgt. Burson had interviewed other inmates. Credibility determinations are the province of the hearing officer, however. *Hudson*, 242 F.3d at 537.

Comparison of the case against Richards to those against accused inmates in some of our previous cases further illustrates that there is sufficient evidence to support the hearing officer in finding Richards guilty. In *Broussard*, an informant told the warden that an inmate planned an escape attempt and had hidden bolt cutters in the kitchen area of the prison. *Broussard*, 253 F.3d at 875. The warden relayed the information to the investigating officer, withholding the name of the informant. The investigating officer found the bolt cutters in the kitchen, and the accused inmate was found guilty in a disciplinary hearing and lost all of his accumulated good-time credit. *Id.* This court held that the inmate did not receive due process because neither the investigating officer nor the hearing officer knew the identity of the confidential informant, and no information on the reliability

9

of the informant was provided to the hearing officer. *Id.* at 876–77. Without the informant's information, the bolt cutters were linked to the accused inmate only by the fact that he, along with about one hundred other inmates, had access to the area in which they were found. *Id.* at 877. The case against Richards is far stronger than that against the inmate in *Broussard*: the identities of all but one of the witnesses implicating Richards were known to the hearing officer (and the identities of all were known to the investigating officer), and Richards was undisputedly present in the day room at the time of the incident, rather than being connected only through having access to the room.

In *Smith*, an inmate was found guilty in a disciplinary hearing of dealing in narcotics. *Smith*, 659 F.2d at 541. The only evidence against the inmate was testimony from the investigating officer that one or more confidential informants had implicated him. *Id.* The disciplinary board making the decision knew neither the identities of the informants nor any details of the confidential information. *Id.* at 546 n.20. Nor was the defendant informed of the identity of any of them. Because the investigating officer testified that the informants had firsthand knowledge and had been reliable in the past, this court held that the disciplinary hearing met constitutional requirements. *Id.* at 546. Again, the case against Richards is stronger than that against the inmate in *Smith*. The hearing officer knew identities of almost

10

all of the witnesses against Richards, and had complete details of their statements.

## Conclusion

The evidence against Richards, including the offense report and confidential report of the investigating officer and Richards's own admissions, is more than sufficient to meet constitutional due process requirements. The judgment of the district court is accordingly

REVERSED.