Morris **BROUSSARD** and John
Lane, Plaintiffs,

v.

Gary **JOHNSON**, Director, Texas Department of Criminal Justice, Institutional Division, et al., Defendants.

No. 6:94cv222.

United States District Court,
E.D. Texas,
Tyler Division.

March 12, 1996.

 

Morris R. Broussard, Kenedy, TX, pro se.

John Lane, Gatesville, TX, pro se.

Bruce Russell Garcia, Asst. Atty. Gen. Attorney General's Office, Criminal Law Enforcement, Division LEDD, Austin, TX, for defendants.

## ***ORDER***

JUSTICE, District Judge.

### I. *Introduction*

Morris Broussard and John Lane, both inmates of the Texas Department of Criminal Justice–Institutional Division ("TDCJ"), proceeding *pro se* and *in forma pauperis* in the above-entitled and numbered civil action, bring this action pursuant to 42 U.S.C. § 1983, alleging violations of their civil rights. This matter was referred to the Honorable Judith K. Guthrie, United States Magistrate Judge. On May 10, 1994, Judge Guthrie conducted a hearing pursuant to *Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), *modified in part on other grounds*, 964 F.2d 400 (5th Cir.1992); and issued a report and recommendation, concluding that the plaintiffs' claims for relief should be denied. Both Broussard and Lane filed objections, entitling them to a *de novo* review of the record in light of their objections. For the following reasons, the report and recommendation is adopted in part and rejected in part.

### II. *Findings of Fact*

In December 1991, a confidential informant advised Charles Martin, senior warden of the Eastham Unit, that Broussard and Lane were planning an escape. The informant further advised that, to facilitate their escape, Broussard and Lane had hidden a cutting implement in the kitchen. After learning that Broussard and Lane had escape-related histories [1] and that both inmates worked in the kitchen area, Warden Martin ordered David Ray Hammers, a captain at the Eastham Unit, to investigate the informant's tip. Broussard and Lane were placed in pre-hearing detention, and a search of the

---

1. Broussard had previously escaped from a Harris County rehabilitation center, and had twice attempted to escape from the Darrington Unit of TDCJ. There was some dispute at the *Flowers* hearing over what Lane's escape history is, but Lane's grievance records reflect that Lane attempted to escape from a county jail in Oklahoma.

kitchen was conducted. Two searches of the kitchen turned up nothing, but during a third search, a pair of bolt cutters was found in a box of coffee in the commissary.

Broussard and Lane were charged with the possession of contraband intended for use in an escape, and after separate disciplinary hearings, both were found guilty. A third inmate, Rocky Garcia, was also charged and convicted, but Warden Martin subsequently overturned Garcia's conviction for lack of evidence. Patrick Ross, a TDCJ captain, was the hearing officer at both Broussard's and Lane's disciplinary hearings.

The primary evidence offered against the inmates at their disciplinary hearings was the testimony of Captain Hammers, the investigating officer.[2] Captain Hammers related the information provided by the informant and confirmed that the bolt cutters had been found in the commissary. Captain Hammers had not interviewed the informant himself and did not even know the identity of the informant; rather, he knew only what Warden Martin had told him. Captain Ross refused to allow the inmates to question Captain Hammers about why the informant was reliable, nor did Captain Ross question Captain Hammers *in camera* regarding the informant's credibility and reliability. Neither the confidential informant nor Warden Martin testified at the disciplinary hearings.[3]

At the *Flowers* hearing, Captain Ross testified that he concluded that the confidential informant was credible and reliable because Captain Hammers and Warden Martin had done so: "Captain Hammers and the Warden [were] both satisfied with the reliability of the informant. So if they were satisfied with it, I also was satisfied." Captain Hammers testified at the *Flowers* hearing that he concluded that the confidential informant was credible and reliable because he had no reason to doubt the opinion of Warden Martin. Testifying *in camera* at the *Flowers* hearing, Warden Martin gave his reasons for concluding that the confidential informant was credible and reliable, but little of this information was imparted to Captain Hammers before the disciplinary hearing. All that Captain Hammers knew about the confidential informant at the time he testified before Captain Ross was that someone had told the Warden that Broussard and Lane had hidden a cutting implement in the kitchen and were planning an escape.

Captain Ross found the confidential informant to be credible and reliable, and thus, Broussard and Lane to be guilty. The informant's tip was the only evidence directly linking Broussard and Lane to the bolt cutters, but it was also established at the hearing that Broussard and Lane worked in the kitchen,[4] lived on the same cell block, and

---

**2.** A tape recording of Broussard's disciplinary hearing, *Defendant's Exhibit No. 6*, has been reviewed. A tape recording of Lane's disciplinary hearing, *Defendant's Exhibit No. 6(a)*, was admitted into evidence, but the tape's quality is too poor to provide a reliable account of what happened at that hearing. The testimony developed at the *Flowers* hearing established that both hearings both took place on the same day, were heard by the same hearing officer, and involved substantially the same evidence. Moreover, the contemporaneous worksheet of Lane's counsel substitute provides sufficient corroboration of the testimony at the *Flowers* hearing to justify the findings of fact regarding Lane's disciplinary hearing.

**3.** The procedure used by Captain Ross did not comply with the TDCJ's rules governing the use of confidential informants at disciplinary proceedings. When the informant's tip is the source of the evidence of guilt, TDCJ regulations provide:

> If information provided by a confidential informant will be used at the disciplinary hearing

as additional evidence, the investigating officer must:

> ....
> b. have interviewed the informant(s) who must have some knowledge of the incident/circumstances of the alleged offenses; and determine how the knowledge was gained which led the investigator to a conclusion of guilt;
> ....
> e. testify at the disciplinary hearing that the testimony of the confidential informant is believed to be reliable, based upon his/her interview, and describe in general terms the substance of the accusation and the conclusion drawn therefrom....

Office for Disciplinary Coordination, TDCJ, Administrative Memorandum—Disciplinary No. 89–VI.E.4–01.

**4.** Lane worked in the commissary, the room in which the bolt cutters were found. Broussard worked in the pot room, and although he did not have direct access to the commissary, his work area was immediately adjacent to the commis-

had attempted to escape in the past. Lane and Broussard lost all "good time" that they had accumulated, were placed in administrative segregation, and lost certain other privileges.

After exhausting their administrative remedies, Broussard and Lane filed this action under § 1983 against various officials of the TDCJ, including the counsel substitute who represented them at the disciplinary proceedings. Alleging violations of the Due Process Clause, the plaintiffs claim that the notice of charges they received was inadequate, that the procedures used to establish the credibility and reliability of the informants were insufficient, and that the evidence presented at their disciplinary hearings does not support the hearing officer's findings of guilt. The plaintiffs seek restoration of their lost good time credits, release from administrative segregation, and damages from the defendants in their individual capacity.

### III. *Analysis*

#### A. **Exclusive Remedy in Habeas Corpus**

█ Although this action has proceeded to this point under § 1983, it must be treated as an action under 28 U.S.C. § 2254, because it challenges the fact and duration of confinement, rather than the conditions of confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 488–90, 93 S.Ct. 1827, 1835–37, 36 L.Ed.2d 439 (1973); *See Alexander v. Ware,* 714 F.2d 416, 419 (5th Cir.1983) ("If a prisoner challenges a 'single allegedly defective [disciplinary] hearing,' he attacks, in essence, the fact and duration of his custody." (quoting *Johnson v. Hardy,* 601 F.2d 172, 174 (5th Cir. 1979))); *see also Wilson v. Foti,* 832 F.2d 891, 892 (5th Cir.1987); *Caldwell v. Line,* 679 F.2d 494, 496 (5th Cir.1982). For the plaintiffs to maintain an action under § 2254, they must exhaust state habeas remedies. *See Serio v. Members of the Louisiana State Bd. of Pardons,* 821 F.2d 1112, 1119 (5th Cir. 1987) ("If a prisoner challenges a single hearing as constitutionally defective, he must first exhaust state habeas remedies."). In this case, the plaintiffs have exhausted their state remedies for purposes of § 2254(b) by pursu-

ing the TDCJ's internal grievance procedures. *See Gartrell v. Gaylor,* 981 F.2d 254, 258 n. 3 (5th Cir.1993) (when challenging a prison disciplinary hearing in habeas corpus, "we have required prisoners to exhaust the TDCJ grievance procedures"); *Spaulding v. Collins,* 867 F.Supp. 499, 502 (S.D.Tex.1993) ("Because this case involves a prison disciplinary action, it is not reviewable by state courts and is properly brought by federal habeas corpus petition to this court" after exhaustion of the TDCJ grievance procedure); *see also Baxter v. Estelle,* 614 F.2d 1030, 1031–32 (5th Cir.1980), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Lerma v. Estelle,* 585 F.2d 1297, 1299 (5th Cir.1978), *cert. denied,* 444 U.S. 848, 100 S.Ct. 95, 62 L.Ed.2d 62 (1979).

Because the analysis of the constitutional issues remains the same regardless of whether this action is brought under § 1983 or § 2254, the plaintiffs request for relief under § 1983 shall be treated as a claim for relief under § 2254. Monetary damages are unavailable in habeas corpus, however, and Broussard and Lane have no § 1983 cause of action until after the resolution of their habeas corpus action. *See Heck v. Humphrey,* — U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (holding that a plaintiff challenging the constitutionality of the outcome of his disciplinary proceeding has no claim for damages under § 1983 until the habeas corpus action has been resolved.). The plaintiffs' claim for damages must therefore be dismissed without prejudice.

#### B. **Notice of Charges**

The plaintiffs object to the Magistrate Judge's conclusion that they received constitutionally sufficient notice of the charges against them. The Magistrate Judge's findings have been examined in light of the plaintiffs' objections, and it is found that the Magistrate Judge is correct in concluding that in this regard, the plaintiffs' rights to due process were not violated. Hence, that portion of the Magistrate Judge's report and recommendation addressing the adequacy of Broussard's and Lane's statements of

---

sary. Approximately one hundred inmates work

in the kitchen, on three shifts.

charges is adopted as the opinion of the court.

## C.  Confidential Informant

█ The primary objection raised by the plaintiffs concerns the procedure used at the disciplinary hearing to establish the credibility and reliability of the confidential informant.[5] The penological environment does not allow the full panoply of rights afforded a citizen in other contexts, but prisoners retain the right to minimal due process protections. *See Wolff,* 418 U.S. at 563–67, 94 S.Ct. at 2978–80. Specifically, "the inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). In addition, the determination of the factfinder must be supported by "some evidence in the record." *Id.; see also Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982).

In *Spellmon–Bey v. Lynaugh,* 778 F.Supp. 338, 347 (E.D.Tex.1991), it was held that a disciplinary hearing officer must make an "independent evaluation of the credibility and reliability of the informant in a fashion that fulfill[s] the principles of due process." While recognizing that security concerns do not allow the full rights of confrontation and cross-examination, *Wolff,* 418 U.S. at 567, 94 S.Ct. at 2980, it was stressed that the hearing officer may not simply accept the investigating officer's conclusions of reliability without making an independent inquiry.

█ In this case, no independent evaluation was made. The hearing officer simply accepted the conclusions of the investigating officer, who had in turn simply accepted the conclusions of the Senior Warden. The investigating officer had no direct knowledge of what the confidential informant actually told the Warden, and no knowledge, whether direct or indirect, of who the informant was, how the informant got his information, or why the Warden thought the informant was reliable. *Cf. Smith v. Rabalais,* 659 F.2d 539, 546 (5th Cir. Unit A 1981) (finding no violation of due process when the investigating officer "was asked if he knew the informers, if he had used them in the past, and if the informers had firsthand knowledge, and he replied in the affirmative in each instance"). Under these circumstances, it is found that Broussard's and Lane's rights to procedural due process were violated.

█ The basis for this conclusion is that the hearing officer had no evidence before him from anyone with direct contact with the confidential informant.[6] A number of circuits have discussed acceptable procedures

---

**5.**  The loss of good time, which is granted according to statute and may be forfeited only for misconduct, Tex. Gov't Code Ann. § 497.001–.005, implicates a liberty interest protected by the Due Process Clause, *see Sandin v. Conner,* —— U.S. ——, ——–——, 115 S.Ct. 2293, 2297–2300, 132 L.Ed.2d 418 (1995); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Placement in administrative segregation, however, does not. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2302.

**6.**  Even assuming that this failure is not itself a violation of due process, it is highly questionable whether the discovery of a pair of bolt cutters in the general area described by the informant provides sufficient corroboration to vest the informant's statement with reliability. In this regard, the hypothetical situation posed by another court is applicable to the facts of this case:

The inquiry by the [disciplinary hearing officer] into the reliability of informers may be diminished (or even satisfied) where there is corroborating physical evidence of the information provided. Sometimes the corroborating physical evidence should be given little weight and would not relieve the [disciplinary hearing officer] of a reliability determination. For example, a weapon might be found where an informant indicates it will be, but if the area where the weapon is found is a public place, the importance of corroboration would be diminished since the weapon could have been planted. In other situations, though, the corroborating evidence may be so strong as to sufficiently substantiate the informer.

*Kyle v. Hanberry,* 677 F.2d 1386, 1391 (11th Cir.1982). Aside from the informant's uncorroborated information, the evidence introduced at the disciplinary hearing was insufficient to link Broussard and Lane to the bolt cutters. *See infra* part III(D).

for establishing the reliability of the informant without compromising prison security. *See, e.g., Taylor v. Wallace,* 931 F.2d 698, 702 (10th Cir.1991); *Young v. Kann,* 926 F.2d 1396, 1402 (3d Cir.1991); *Freitas v. Auger,* 837 F.2d 806, 810 & n. 9 (8th Cir.1988); *Zimmerlee v. Keeney,* 831 F.2d 183, 186–87 (9th Cir.1987) (per curiam), *cert. denied,* 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988); *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Hensley v. Wilson,* 850 F.2d 269, 276–77 (6th Cir.1988); *Kyle,* 677 F.2d at 1390. Common to all of them, whether explicitly or implicitly, is the requirement that some evidence be provided, whether testimonial or documentary, from an officer who has had contact with the informant.[7] *See also Smith,* 659 F.2d at 546 (approving a procedure based on an officer's assertions of first-hand knowledge of the informant's reliability). Deciding that an informant's statement is reliable cannot be done until some reasonably reliable evidence is introduced as to what the informant actually said. This evidence can be provided *in camera,* whether through live testimony or documentary submission, but it must come from someone who has interviewed the informant, who can accurately relate what was said, and who was in a position to evaluate the informant's credibility and reliability. In this regard, Captain Hammers, who was simply passing on what little Warden Martin had told him about the informant, was not a competent source of information.[8]

Finally, in reaching the conclusion that Broussard's and Lane's due process rights were violated, this court is mindful of the deference given to prison administrators in adopting policies concerning institutional security. *See Hill* ("[I]n identifying the safeguards required by due process, the Court

---

7. Notably, the TDCJ's internal operating procedures currently require that the testifying officer have interviewed the informant. *See supra* note 3.

8. In the report and recommendation, the Magistrate Judge concluded that Broussard and Lane were not denied due process because Warden Martin testified *in camera* at the *Flowers* hearing regarding the informant's reliability:

> In [*Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986) ], the Court held that prison officials could satisfy the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for *in camera* review. Here, Warden Martin testified *in camera* as to the reliability of the confidential informant and noted that when Broussard advised him of the escape plans, the details provided by Broussard corresponded with the information provided by the confidential informant. The Court is satisfied that the confidential informant was reliable and that the evidence against Broussard and Lane was sufficient to support the finding of guilt. Hence, Broussard and Lane were not denied due process in the course of their disciplinary hearings.

*Report and Recommendation of the United States Magistrate Judge,* Aug. 8, 1995, at 6 (citation omitted).

The problem with this reasoning is that the information Warden Martin possessed was never presented to the disciplinary hearing officer. The *Mendoza* court, in contrast, reviewed *in camera* a confidential report that had been originally submitted to the prison disciplinary committee, *Mendoza,* 779 F.2d at 1290 & n. 2, and concluded that the report sufficiently supported the committee's determination of the informants' reliability, *id.* at 1295–96. Moreover, the primary concern of the court in *Mendoza,* and the primary impetus for its discussion of the propriety of *in camera* review, was whether the inmate had a right of access to the confidential report, or to a public statement of reasons for the disciplinary committee's conclusions of reliability. *See id.* at 1296 (holding that the inmate was not denied due process by the disciplinary's committee's "refusal to reveal the confidential information that would lead to the identity of the confidential informants"). In evaluating the procedures used to establish the reliability of the informant, the focus of a reviewing court is on what happened at the disciplinary hearing, and, specifically, whether the person or committee responsible for determining the inmate's guilt made an independent inquiry at the disciplinary hearing into the informant's reliability. *See id.* ("Submission of a confidential report for *in camera* review allows the court to determine whether the *committee's* actions were fair, i.e., whether the committee acted in an arbitrary and capricious manner by accepting confidential information without some indication of the reliability of the information." (emphasis added)). The information Warden Martin provided at the *Flowers* hearing regarding the informant's reliability was not presented to Captain Ross, the disciplinary hearing officer, or even to Captain Hammers, the testifying officer, at the time of the disciplinary hearing; his testimony thus does not answer the question of whether Broussard and Lane received due process at their disciplinary hearings.

has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation."). It bears emphasis, therefore, that the requirements discussed above do not threaten the safety of the informant—*i.e.*, an inmate has no right of access to the testimony given to the hearing officer concerning the informant. *See Smith*, 659 F.2d at 544 (recognizing the discretion of prison officials to restrict inmate access to evidence supplied by a confidential informant). Nor do the requirements impose an undue burden on prison officials—all that is required is that TDCJ follow its current regulations regarding the use of confidential informant testimony. *See supra* note 3 (requiring that the investigating officer testifying at a disciplinary proceeding have interviewed the confidential informant).

### D. Sufficiency of the Evidence

█ Having concluded that the plaintiffs' rights to procedural due process were violated, it remains to determine whether evidence remains in the record to support the hearing officer's finding of guilt. *See Smith*, 659 F.2d at 545 (prison disciplinary proceedings may be overturned only when no evidence in the record supports the decision); *see also Hill*, 472 U.S. at 455, 105 S.Ct. at 2773–74 ("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."); *Stewart v. Thigpen*, 730 F.2d 1002, 1005 (5th Cir.1984) (arbitrary and capricious standard applies). Without the informant's tip, the only evidence offered at the disciplinary proceeding that links Broussard and Lane to the bolt cutters is the fact that they worked in the area in which the bolt cutters were found, an area to which approximately one hundred inmates had access. To single out Broussard and Lane from the three shifts of workers that come and go through the kitchen at all hours is arbitrary, and it is found that the reliable evidence offered at the disciplinary proceedings does not support a finding of guilt. *Cf. Hill*, 472 U.S. at 457, 105 S.Ct. at 2775 (finding no due process violation when "the

record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary"). No competent evidence in the record of the disciplinary hearing supports a finding that Broussard and Lane were the persons responsible for hiding the bolt cutters.

### IV. *Conclusion*

On the record as developed at the *Flowers* hearing, it is found that the plaintiffs' rights to procedural due process were violated in their respective disciplinary hearings, and it is further found that the competent evidence introduced at their disciplinary hearings does not support a finding of guilt. It is recognized, however, that granting a writ of habeas corpus in the same order that converts this action from § 1983 to § 2254 would be premature without providing the State an opportunity to address any defenses unique to the habeas context. The State is therefore granted twenty days from the date of service of this order to show cause why the applications for the writ of habeas corpus, vacating the findings of guilt in the plaintiffs' respective disciplinary hearings, should not be granted.

Accordingly, it is **ADJUDGED** that the plaintiffs' objections should be, and are hereby, **SUSTAINED IN PART AND OVERRULED IN PART.** Further, it is **ADJUDGED** that the report and recommendation of the Magistrate Judge should be, and is hereby, **ADOPTED IN PART AND REJECTED IN PART.**

Further, it is **ADJUDGED** that this action, originally filed under 42 U.S.C. § 1983, should be, and is hereby, treated as an application for the writ of habeas corpus under 28 U.S.C. § 2254. Further, it is **ORDERED AND ADJUDGED** that all claims for damages asserted by the plaintiffs shall be, and are hereby, **DISMISSED WITHOUT PREJUDICE.**

Further, the State of Texas shall be, and is hereby, **ORDERED** to **SHOW CAUSE** why the application for the writ of habeas corpus submitted by Morris Broussard and John Lane should not be granted. The State is

granted twenty days from the date of service of this order within which to reply.