# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 8, 2009

Charles R. Fulbruge III
Clerk

No. 07-41064

GEORGE MORGAN

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal arises from a judgment denying relief in a habeas corpus case brought under 28 U.S.C. § 2254 by Texas state prisoner George Morgan. Morgan challenges a disciplinary proceeding in which he was charged with the use of indecent or vulgar language in a note he mailed to opposing counsel in connection with pending litigation. He says that the First Amendment protects his vulgar pen from penalty and that the Fourteenth Amendment protects his good time credits from loss. The district court denied relief, and we granted a certificate of appealability (COA). We decide that the Texas Department of

Criminal Justice (TDCJ) has a legitimate penological interest in rehabilitation that justified disciplining Morgan, and that the TDCJ did not deny Morgan due process at his disciplinary hearing. Accordingly, we affirm.

## I.

The underlying facts are not disputed. In 2005, during a habeas proceeding apart from this one, in response to the State of Texas's motion to dismiss, Morgan mailed Assistant Attorney General Susan San Miguel a note written on toilet paper. That note said: "Dear Susan, Please use this to wipe your ass, that argument was a bunch of shit! You[rs] Truly, George Morgan." Assistant Attorney General S. Michael Bozarth returned the note to the warden of the Stevenson Unit, the correctional institution where Morgan was incarcerated, along with a letter describing the circumstances of Morgan's correspondence.

Morgan was charged with the use of indecent or vulgar language under Rule 42.0 of the TDCJ Disciplinary Rules and Procedures. At his disciplinary hearing, he was found guilty and, among other penalties, was punished with the loss of fifteen days of good time credit. Morgan filed step-one and step-two grievances appealing the disciplinary proceeding, both of which were denied.

Morgan then filed the instant application for habeas relief in the United States District Court for the Southern District of Texas, alleging that the disciplinary proceeding violated his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. The district court granted summary judgment for the TDCJ, dismissed Morgan's application, and denied a COA. Morgan filed a motion to alter or amend judgment, which was denied. He appealed, and this court granted a COA. We now decide whether Rule 42.0, as applied, violated Morgan's rights.

## II.

Rule 42.0 of the TDCJ Disciplinary Rules and Procedures prohibits the "use of indecent or vulgar language or indecent or vulgar gestures in the presence of or directed at an employee or any person who is not an offender." Morgan argues that the rule, as applied to his mailed note, is an unnecessary infringement of his First Amendment right to free speech because there is no legitimate penological reason for applying the rule to outgoing mail. The district court rejected that argument, concluding that the rule was properly applied to restrict the use of indecent or vulgar language in "legal mail" directed at opposing counsel. The district court also concluded that Morgan was not denied due process at his disciplinary hearing.

We review the district court's summary judgment, including its conclusions of law, *de novo. E.g., Virgil v. Dretke*, 446 F.3d 598, 604-05 (5th Cir. 2006).

## A.

It is well-established that a prisoner retains certain First Amendment rights notwithstanding his incarceration. *See, e.g., Pell v. Procunier*, 417 U.S. 817, 822 (1974). Nevertheless, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979) (quoting *Price v. Johnson*, 334 U.S. 266, 285 (1948)). In the First Amendment context, a prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822. It is generally recognized that security, order, and rehabilitation are legitimate penological objectives. *E.g., Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974).

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court announced four factors relevant to determining whether a prison regulation that restricts

constitutional rights is permissible: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate government interest put forward to justify it"; (2) "whether there are alternative means of exercising the right"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates"; and (4) whether "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id*. at 89-90. In a recent case the Supreme Court, unsurprisingly, acknowledged the particular importance of the first factor, explaining that in some cases the second, third, and fourth factors can "add little, one way or another, to the first factor's basic logical rationale." *Beard v. Banks*, 548 U.S. 521, 532 (2006). In the light of the first factor, "the real task" is to determine whether there is a "*reasonable* relation" – that is, "more than simply a logical relation" – between the prison regulation and the legitimate penological interest. *Id*. at 533. Our own cases reflect this approach to *Turner* analysis. Specifically, we have held that where, as here, a prison regulation restricts a prisoner's rights with respect to mail, "the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest." *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993) (citing *Turner*, 482 U.S. at 78).

We necessarily begin with the prison's asserted legitimate penological interest. The TDCJ argues that it has a legitimate penological interest in rehabilitating prisoners in preparation for their return to society, and that by applying Rule 42.0 to punish Morgan for the use of indecent or vulgar language in an outgoing letter, the TDCJ is correcting behavior that mainstream society deems unacceptable.

We have not had prior occasion to address whether the penological interest in rehabilitation can justify the suppression of speech in outgoing mail. We have, however, previously rejected the penological interests in order and security as justifications for the suppression of speech in outgoing mail merely because

it is coarse and offensive, vulgar, or defamatory. *McNamara v. Moody*, 606 F.2d 621, 624 (5th Cir. 1979); *see also Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989) (outgoing mail "d[oes] not, by its very nature, pose a serious threat to prison order and security"). In *McNamara,* a prisoner wrote a letter to his girlfriend in which he stated that a prison officer had sex with a cat. The officer, who read the letter, refused to mail it. *McNamara*, 606 F.2d at 623. The prison argued to this court that permitting such speech in outgoing mail would lead to a "total breakdown" in prison security and discipline. *Id.* at 624. This court, however, observed that "coarse and offensive remarks are not inherently breaches of discipline and security," and explained that "[c]ensorship for violation of prison disciplinary rules is properly limited to communications that relate to more concrete violations such as 'escape plans, plans for disruption of the prison system or work routine, or plans for the importation of contraband.'" *Id.* (quoting *Martinez*, 416 U.S. at 413).

*McNamara* is different from this case in, at least, two very important respects. First, the prison in *McNamara* did not assert a legitimate penological interest in rehabilitation, and therefore we did not specifically address rehabilitation in that case. Second, although referencing a guard, the letter in *McNamara* was privately addressed to, and intended only for, the prisoner's girlfriend, and not, as here, addressed to and intended for opposing counsel in connection with pending litigation. As the district court observed, the note Morgan wrote on the piece of toilet paper and mailed to opposing counsel was unsolicited, harassing, and resembled a threat.

The TDCJ has a legitimate penological interest in rehabilitating prisoners in preparation for their return to society, and disciplinary proceedings can further that interest. *See Wolff v. McDonnell*, 418 U.S. 539, 562 (1974) ("[T]he proceedings to ascertain and sanction misconduct themselves play a major role in furthering the institutional goal of modifying behavior and value systems of

prison inmates sufficiently to permit them to live within the law when they are released."). Morgan's note demonstrated a completely unjustified disrespect for authority, expressed in the most unacceptably vulgar form, which would be offensive in mainstream society; it would not be tolerated from a peer member of the bar, and would not be tolerated from a pro se litigant in the free setting. The TDCJ's disciplinary action serves to correct behavior that would seriously prejudice Morgan when he returns to the civil world. We thus conclude that the TDCJ had a legitimate penological interest in rehabilitation that justified the disciplinary action. Rule 42.0, as applied to Morgan's mailed note, was not an impermissible infringement of his First Amendment right to free speech

B.

Morgan also alleges that he was denied due process at his disciplinary hearing because he was denied the right to present witnesses, there was insufficient evidence to support the charge, and the disciplinary hearing officer was biased. Morgan's claims are without merit.

We do not dispute that revocation of good time credits that embody a liberty interest must comply with minimum procedural requirements. *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). A prisoner is entitled to: (1) written notice of the charges at least 24 hours prior to a disciplinary hearing; (2) an opportunity "to call witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) "a written statement by the factfinders as to the evidence relied on and the reason for the disciplinary action." *Wolff*, 418 U.S. at 564-65 (citations omitted). A reviewing court is required only to find "some evidence" supporting a disciplinary hearing officer's decision. *Richards v. Dretke*, 394 F.3d 291, 294 (5th Cir. 2004) (citing *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985) ("The

requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.")).

We are satisfied that the requirements of due process were satisfied at Morgan's disciplinary hearing. Morgan received notice of the disciplinary hearing and his attendant rights. Although there is no constitutionally protected right to counsel substitute in a disciplinary proceeding, he nevertheless was provided such assistance. At the hearing, Morgan called the charging officer as a witness, and that officer testified via speaker phone. Morgan also requested the prison's mail room supervisor and Assistant Attorney General S. Michael Bozarth be called as witnesses, but the hearing officer properly denied that request. Any testimony of the mail room supervisor, who submitted a statement indicating that he did not screen Morgan's outgoing mail, was irrelevant in the light of the fact that Morgan's note was not intercepted, but instead returned to the prison by Bozarth. It was also not unreasonable for the hearing officer to refuse to call Bozarth, given that his involvement in the facts was not at issue and that Morgan apparently sought Bozarth's legal opinion, not his factual testimony. At the conclusion of the hearing there was more than "some evidence" sufficient to support disciplinary action. Specifically, the charging officer's report and testimony, Morgan's admission that the note was in his handwriting, and prison mail logs all supported the finding against him. Morgan's claims that he was denied the right to present witnesses and that there was insufficient evidence to support the charge are without merit.

Finally, to prevail on his claim that his hearing officer was biased, Morgan needed to show that the actions taken "present[ed] such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Wolff*, 418 U.S. at 570. Morgan contends that the hearing officer was biased because he rejected Morgan's questions to the charging officer. The hearing officer allowed many of Morgan's questions, and also himself questioned Morgan about the

factual background of the charges. Morgan's bias claim is therefore also without merit.

## III.

Accordingly, for the reasons stated herein, the district court's judgment is

AFFIRMED.