# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 19, 2010

Charles R. Fulbruge III
Clerk

No. 09-50648
Summary Calendar

MEREDITH MAZE; JO ANN RIVERA, as next friend of M. M., a Minor
Child,

Plaintiffs - Appellants

v.

ROLAND TAFOLLA, Sheriff, Bexar County, Texas,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-CV-263

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A pretrial detainee and her minor daughter brought a Section 1983 claim against the sheriff in charge of the county jail. Both claimed that violations of their constitutional rights occurred when they were not allowed contact visits. Summary judgment was granted for the sheriff. We AFFIRM.

## FACTS

Meredith Maze was arrested in June 2005 and charged with murder. For about two and a half years, she was incarcerated in the Bexar County Adult

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-50648

Detention Facility in San Antonio, Texas, awaiting trial.  When her detention began, her daughter was two years old.  The daughter was in the custody of Maze's mother throughout the period of pretrial detention. Maze was eventually convicted of manslaughter.

Soon after her detention, Maze learned that the facility provided a program entitled "Mothers and Their Children," or MATCH.  It gave parenting classes to incarcerated mothers and allowed them to have contact visits with their children.  The problem for Maze was that mothers detained on murder charges were ineligible to participate.

Maze pursued remedies within the detention facility to remove this limitation but was unsuccessful.[1]  On March 31, 2008, Maze brought suit in the United States District Court for the Western District of Texas.  Also a plaintiff is Maze's mother, Jo Ann Rivera, who joined the suit as next friend of Meredith's five-year old daughter, Madison.  We will refer to the plaintiffs as "Maze."  he claim was under 28 U.S.C. § 1983. Damages were sought from the Bexar County sheriff.  An injunction also was requested that would stop enforcement of the provision that inmates charged with murder could not participate in MATCH.

The parties agreed that the Magistrate Judge could conduct all proceedings and enter judgment in the case.  *See* 28 U.S.C. § 636(c).  On June 30, 2009, the Magistrate Judge granted summary judgment to the defendant.  All claims were dismissed.  Maze appealed.

## DISCUSSION

Maze raised only one issue on appeal: "Whether the trial Court granted defendant's motion for summary judgment in error due to plaintiffs' alleged failure to assert viable § 1983 claims."  A specific part of the argument is that the Magistrate Judge should have applied strict scrutiny to the policy of not

---

[1] In the district court, the sheriff claimed Maze had failed to exhaust her administrative remedies.  That claim was rejected and is not an issue on appeal.

allowing detainees charged with murder to participate in MATCH, and not the rational basis analysis that was used. There is also an effort to identify relevant liberty interests in a manner different than was articulated below.

These claims raise strictly legal questions, considered anew by us with awareness of, but without deference to, the lower court's legal conclusions. *See Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009).

There are no contested facts on appeal.

The parties do not criticize the Magistrate Judge's explanation of the base principles found in *Turner v. Safley,* 482 U.S. 78 (1987). A jail or prison regulation that "impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The *Turner* Court collected four principles from several of its precedents to structure the analysis of whether jail or prison regulations are reasonably related to legitimate penological interests.

(1) "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it."

(2) "A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates."

(3) "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."

(4) "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation."
*Id.* at 89-90 (citations omitted).

As indicated, the *Turner* test applies to infringement on constitutional rights. Maze's argument is that there is a fundamental right "to foster and nourish a mother-daughter relationship." Fundamental rights generally cannot

be abridged without the governmental regulation surviving strict scrutiny. ERWIN CHEMERINSKY, CONST. LAW: PRINCIPLES AND POLICES § 10.1.1, at 792 (3d ed. 2006). The sheriff is correct that such an argument was not made in the district court. We do not address arguments raised for the first time on appeal. *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 993 n.6 (5th Cir. 1999).

The argument we do address is that MATCH itself created a liberty interest. As Maze's appellate brief describes the point, the right asserted is that "of a pretrial detainee to participate equally in a county sponsored self-improvement and contact visitation program without being arbitrarily and unreasonably excluded on the sole basis of her criminal charge."

The Magistrate Judge never resolved whether there was a liberty interest or some other qualifying constitutional right. Instead, the claim was found to fail because of the *Turner* factors. We will also analyze the regulation without first deciding if a qualifying right existed.

We now apply *Turner*. Affidavits from detention facility officials explained the reasons for barring those charged with murder from participating in the program. Inmates have contact with their children in group settings. The decision was made for safety reasons not to allow those charged with murder, and thus not their children either, to be in group settings with inmates charged with lesser crimes and with their children. Allowing higher-risk detainees to have contact visits and to participate in programs separate from the remainder of the participants would be expensive, requiring more guards or more risk. There was no alternative form of contact visit available, but there were non-contact visits that Maze had with her daughter.

It is true that Maze presented competing affidavits stating expert opinion that those accused of murder did not need to be segregated in a program such as this from those accused of other crimes. We do not find that this lawsuit is the place for that debate to be resolved. It was enough that legitimate interests

were articulated, that they are reasonable ones, and the sheriff had adopted them as reasons to leave those charged with murder ineligible for MATCH. Barring those who may have committed a murder was "reasonably related to legitimate penological interests."

In summary, there was a reasonable connection between the manner in which MATCH operated and legitimate governmental interests. Accommodation of higher-risk inmates would have either been expensive or would have increased risks. Other alternatives, primarily non-contact visits, were made available. There simply were no "ready alternatives" that would have provided contact visits and parenting classes for those charged with murder.

A relatively recent Supreme Court decision, though distinguishable, gives insight on the present status of *Turner*. *See Overton v. Bazzetta*, 539 U.S. 126 (2003). The plaintiffs were not pretrial detainees but inmates serving their sentences after conviction, a distinction Maze points out in rejecting the applicability of its reasoning. The State of Michigan limited the number and category of people who could have contact visits with inmates; prisoners classified as the highest security risks could not have contact visits at all. *Id*. at 129-30. The Court applied *Turner*: each rule bore a rational relationship to legitimate penological interests; the prison had maintained some forms of visits for almost all inmates; the impact of accommodation on guards, other inmates, and resources would be significant. *Id*. at 133-36. As to alternatives, the standard that must be met is that there is "some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Id*. at 136 (citing *Turner*, 482 U.S. at 90-91). There were no such alternatives. *Id*.

The status of pretrial detainees such as Maze, whose conviction for murder might be in her future, and that of inmates in state and federal prisons whose convictions for crimes are in their past, is distinguishable. Yet we do not see a

source of authority for holding that the *Turner* test applies differently.  The evidence will be different at times, but the standard is the same.

The fact that Maze eventually was found guilty only of manslaughter, an offense that apparently would not have barred her participation in MATCH, is of no consequence in the present suit.  The sheriff had to make determinations about participation based on reasonable classifications.  Maze was classified as high-risk based on the charge against her.  That was reasonable.

The MATCH program's prohibitions applicable to detainees charged with murder are valid regulations.  We AFFIRM.