IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,                                  :
                        Appellant               :
                                                :    No.  422 C.D. 2016
               v.                               :
                                                :    Submitted:  May 6, 2016
Heidi Sroka, et al.; S. Smith;                  :
R. Snyder; J. Dupont; S. Darr;                  :
B. Murphy; C. Saylor; R. Gauntner               :


*OPINION NOT REPORTED*


MEMORANDUM OPINION
PER CURIAM                                           FILED:  July 29, 2016


        Rasheed Nifas (Appellant) appeals *pro se* from the June 23, 2015 order
of the Court of Common Pleas of Somerset County (trial court) denying his petition
to proceed *in forma pauperis* (IFP) and dismissing his complaint pursuant to
Pa.R.C.P. No. 240(j).[1]  We affirm.

        Appellant is incarcerated at the State Correctional Institution at Somerset
(SCI-Somerset).  On June 3, 2015, Appellant filed a civil rights action under Section
1983[2] against Heidi Sroka, the Grievance Coordinator; J. Dupont, a Hearing
Examiner; R. Snyder and S. Smith, Corrections Officers; S. Darr, B. Murphy, and C.
Saylor, Mailroom Personnel; and R. Gauntner, Librarian (collectively, Appellees).

_____

        [1] Pa.R.C.P. No. 240(j) permits a trial court, prior to ruling on an *in forma pauperis* request,
to dismiss an action where the trial court is satisfied that the action is frivolous.  *Pelzer v. Wrestle*,
49 A.3d 926, 928 n.1 (Pa. Cmwlth. 2012).

        [2] Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. §1983.

In his complaint, Appellant averred in relevant part as follows. In July 2014, the prothonotary's office informed Appellant that they could not locate his exhibits for docketing in another civil action and Appellant sent the prothonotary a letter. Exhibit 2 to the complaint details the statements that Appellant made in this letter. Rather than reproduce them here, this Court will simply note that they evidence sexual threats and harassment of the most profound and despicable nature.

A trial judge reviewed the letter, determined that "the language contained therein [was] obviously vulgar and offensive," and forwarded it to Appellee Sroka. (Complaint, Ex. 1.) In an accompanying letter, the trial judge stated that Appellee Sroka could use Appellant's correspondence to the prothonotary "in any manner consistent with the processes, policies, and procedures of the Department of Corrections [Department] . . . ." *Id.* Upon receipt of Appellant's letter, Appellees confiscated it and filed allegedly falsified misconduct charges against Appellant for violating the Department's Regulations concerning the unauthorized use of mail and the use of abusive, obscene, or inappropriate language. On August 11, 2014, Appellee Dupont convened a misconduct hearing, but did not provide Appellant with a physical copy of the trial judge's letter to Appellee Sroka. Appellant was found guilty of violating the Department's regulations. (Complaint, ¶¶21-26.)

On October 6, 2014, Appellant provided Appellee Gauntner, the Librarian, with "legal documents . . . to be copied for an anticipated cause of action" and Appellee Gauntner seized the legal documents. (Complaint, ¶27.) More specifically, Appellee Gauntner prepared the legal documents for photocopying and discovered that two of the five pages belonged to another inmate and seized these two pages as contraband under Regulation 203 because it constituted "property of another." (Complaint, Ex. 6.)

Based on these averments, Appellant asserted that Appellees violated his First Amendment right to free speech when they "read, censored, and reproduced" his letter to the prothonotary. (Complaint, ¶34.) Appellant further asserted that Appellee Dupont contravened his due process rights when he "deprived [Appellant] of the letter sent by the [trial] judge to use as a defense" in the misconduct hearing. (Complaint, ¶35.) Finally, Appellant alleged that Appellee Gauntner violated his First Amendment right to access the courts by seizing "anticipated legal material," "preventing [Appellant] of the capability of filing [a] lawsuit," and "causing [Appellant] to suffer an actual injury." (Complaint, ¶31.)

By memorandum and order dated June 23, 2015, the trial court dismissed Appellant's complaint as frivolous and denied Appellant IFP status.

On appeal to this Court,[3] Appellant argues that the trial court erred in dismissing his complaint as frivolous under Rule 240(j). Appellant maintains that he has alleged viable constitutional violations.

In relevant part, Rule 240(j)(1) states:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed [IFP], the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

Pa.R.C.P. No. 240(j)(1). A frivolous action is one that "lacks an arguable basis either in law or in fact." Pa.R.C.P. No. 240(j)(1), *Note* (citation omitted). An action is

---

[3] Appellate review of a decision dismissing an action pursuant to Pa.R.C.P. No. 240(j)(1) is limited to determining whether an appellant's constitutional rights have been violated and whether the trial court abused its discretion or committed an error of law. *McGriff v. Vidovich*, 699 A.2d 797, 798 n.2 (Pa. Cmwlth. 1997).

frivolous under Pa.R.C.P. No. 240(j)(1), if, on its face, it does not set forth a valid cause of action. *Keller v. Kinsley*, 609 A.2d 567, 568 (Pa. Super. 1992).

Appellant argues that his letter to the prothonotary was privileged legal mail and that Appellees could not read it after receiving it from the trial judge. Appellant also argues that he could not be disciplined for statements he made to the prothonotary. According to Appellant, these actions constitute violations of his First Amendment right to free speech.

"Pennsylvania state prisoners have a First Amendment right not to have properly marked legal mail opened outside of their presence." *Jones v. Doe*, 126 A.3d 406, 408 (Pa. Cmwlth. 2015). True "legal mail" consists of correspondence between an inmate and an attorney, which is given heightened protection because of First Amendment concerns and the potential for interference with access to the courts. *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005).

However, as contrasted to mail to or from a prisoner's lawyer, prisoner mail sent to or received by the courts does not implicate the First Amendment right to access the courts because they are public documents. *See also Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) ("[A]ll correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files."), *accord Kennan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). Somewhat relatedly, privileged communications are traditionally deemed to be waived once they are disclosed to a third-party. *See Bagwell v. Pennsylvania Department of Education*, 103 A.3d 409, 417 (Pa. Cmwlth. 2014) (en banc) ("Once attorney-client communications are disclosed to a third party, the attorney-client privilege is deemed waived.").

4

Here, Appellant's letter to the prothonotary was filed and docketed in the record in his separate civil action and became an official public record, (Complaint, Ex. 8), not "legal mail," and Appellees could thereafter read its content without infringing upon Appellant's First Amendment rights. Further, any privilege that Appellant possessed with respect to the letter was waived when the letter was disclosed to the prothonotary. Consequently, Appellant's argument is devoid of merit.

Moreover, it is well-established that a prisoner retains certain First Amendment rights notwithstanding his incarceration. *See, e.g., Pell v. Procunier*, 417 U.S. 817, 822 (1974). Nevertheless, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). In the First Amendment context, a prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822. It is generally recognized that security, order, and rehabilitation are legitimate penological objectives. *See, e.g., Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974).

Case law establishes that a prisoner can be disciplined for conveying abusive language to prison employees and/or other public officials without violating the First Amendment. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that there was no First Amendment violation where the prisoner's comment to a hearing officer was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding); *Leonard v. Nix*, 55 F.3d 370, 373-74 (8th Cir. 1995) (concluding that there was no First Amendment violation where a prisoner wrote a letter to an outsider using "vile language" directed at the warden). In *Morgan*

5

*v. Quarterman*, 570 F.3d 663 (5th Cir. 2009), the United States Court of Appeals for the Fifth Circuit determined that the First Amendment was not contravened where a litigating prisoner sent an Assistant Attorney General a vulgar note written on toilet paper and was subject to disciplinary action. The court stated that the prisoner's note,

> demonstrated a completely unjustified disrespect for authority, expressed in the most unacceptably vulgar form, which would be offensive in mainstream society; it would not be tolerated from a peer member of the bar, and would not be tolerated from a *pro se* litigant in the free setting. The [correctional facility's] disciplinary action serves to correct behavior that would seriously prejudice [the prisoner] when he returns to the civil world. We thus conclude that the [correctional facility] had a legitimate penological interest in rehabilitation that justified the disciplinary action.

*Id.* at 667.

Here, the statements in Appellant's letter were not comprised of criticism about the operation of the court system or the prothonotary's office. Nor were the statements sent to a family member, paramour, or friend about a personal or public matter. In both instances, the statements would most likely be protected by the First Amendment to an extent that Appellant could not face discipline for exercising his freedom of speech. However, Appellant's statements were sexually abusive and threatening, and, akin to the situation in *Morgan*, the letter was sent to a public official of the court system. *See Brown v. Levy*, 73 A.3d 514, 519 (Pa. 2013) ("As the clerk of court, the prothonotary is considered to be the Commonwealth government as a Commonwealth officer.") (citation omitted). Therefore, in accordance with above case law, we conclude that the Department had a legitimate penological interest in rehabilitation that justified the disciplinary action and Appellant's First Amendment claim is frivolous.

6

Appellant also argues that the Librarian of SCI-Somerset, Appellee Gauntner, contravened his First Amendment rights in reading and confiscating legal materials that he intended to use in connection with some unknown legal claim.

"It is generally not a violation of the Constitution of the United States for a correctional officer who is in charge of a legal library in a prison to look at an inmate's legal documents before copying them." *Graham v. Henderson*, 897 F. Supp. 1157, 1159-60 (N.D. Ind. 1994). Although confiscation of legal documents may constitute a violation of a prisoner's First Amendment right to petition the courts, in order to state a cognizable claim for violation of the right to access to the courts, a prisoner must allege and offer proof that he suffered an "actual injury" to court access as a result of the denial. *Hackett v. Horn*, 751 A.2d 272, 275-76 (Pa. Cmwlth. 2000). The United States Supreme Court has defined actual injury as the loss or rejection of a non-frivolous legal claim regarding the sentencing or the conditions of confinement. *Id.* at 276. In order to survive dismissal of a complaint, a prisoner must describe an underlying claim and explain why it possesses arguable merit. *Christopher v. Harbury*, 536 U.S. 403, 416-17 (2002).

Here, Appellant has not provided any factual detail in his complaint regarding what legal claim he lost, or was deprived of pursing, as a result of the confiscation of his legal materials. Indeed, Appellant does not even discuss the general nature of his legal claim in either his complaint or appellate brief. Therefore, we conclude that Appellant's First Amendment claim lacks any basis in fact or law.

As a final matter, Appellant asserts that Appellee Dupont committed a due process violation in failing to provide Appellant with the trial judge's letter to Appellees prior to the misconduct hearing. Appellant contends that the trial judge's letter was evidence relevant to his defense. Appellant further asserts that Appellees

Synder and Smith falsified the misconduct report with respect to his discipline for sending the letter to the prothonotary.

"[W]ith respect to [a] misconduct hearing, due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports." *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). "Thus, so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Id.* at 654. The Department's regulation on inmate discipline provides, in relevant part, that inmates will receive, if desired, a "[h]earing before an impartial hearing examiner . . . for charges specified by the Department in the Department . . . Inmate Handbook," at which the inmate is given the "[o]pportunity . . . to tell his story and to present relevant evidence." 37 Pa. Code §93.10(b)(2), (3).

Here, Appellant had the opportunity to be heard at the misconduct hearing and to present evidence on his behalf. The trial judge's letter to Appellee Sroka reflects that the trial judge informed Appellee Stroka that he thought the language was "vulgar and offensive" and told her that she could use it in any manner consistent with the Department's policies. (Complaint, Ex. 1.) Contrary to Appellant's assertions, the exhibits to his complaint establish that, although he may not have received a hard copy of the trial judge's letter, he was nonetheless provided with the information contained therein prior to the misconduct hearing. (Complaint, Ex. 4.) *See Baravordeh v. Borough Council of Prospect Park*, 699 A.2d 789, 791 (Pa. Cmwlth. 1997) ("[A] court is not bound to accept as true any averments in a complaint which are in conflict with exhibits attached to it."). Regardless, it is difficult to imagine how the trial judge's letter would be relevant or beneficial to

8

Appellant's defense, especially considering that Appellant authored the letter to the prothonotary that formed the basis of the misconduct charges. Therefore, in this context, we conclude that Appellant's due process claim is frivolous.

Accordingly, having determined that the trial court did not err in dismissing Appellant's complaint and denying him IFP status, we affirm the trial court's June 23, 2015 order.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas, : 
                Appellant : 
 : No. 422 C.D. 2016
        v. : 
 : 
Heidi Sroka, et al.; S. Smith; : 
R. Snyder; J. Dupont; S. Darr; : 
B. Murphy; C. Saylor; R. Gauntner : 


***PER CURIAM***

***ORDER***


AND NOW, this 29th day of July, 2016, the order of the Court of Common Pleas of Somerset County, dated June 23, 2015, is affirmed.